# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOPOLDO PRADO, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendant. | Case No.: 3:17-cv-00128-H-AGS<br><br>**ORDER:**<br><br>**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 7]**<br><br>**GRANTING DEFEDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 6]** |

On January 24, 2017, Plaintiff Leopoldo Prado ("Plaintiff") filed a complaint against Defendant United States of America ("Defendant"), claiming Defendant improperly denied him disability benefits under the terms of the Servicemembers' Group Life Insurance Traumatic Injury Protection Program ("TSGLI"). (Doc. No. 1.) On June 30, 2017, the parties filed cross-motions for summary judgment. (Doc. Nos. 6, 7.) On July 28, 2017, the parties filed responses in opposition to the motions. (Doc. Nos. 8, 9.) On August 14, 2017, the parties filed their replies. (Doc. Nos. 10, 11.)

## FACTUAL BACKGROUND

On September 26, 2013, Plaintiff was playing flag football and collided with another player. (AMD0001, AMD0056, AMD0165.) The collision caused a neck injury, leading to various complications including vertebral occlusion, edema, and strokes. (AMD0016, AMD0056.) Plaintiff was admitted to the Naval Medical Center San Diego – Balboa Naval Hospital ("Naval Medical Center") on September 28, 2013. (AMD0056.) On October 1, 2013, Plaintiff underwent surgery, a suboccipital craniectomy and cervical laminectomy, and was admitted to the Intensive Care Unit ("ICU") for recovery. (AMD0070.) On October 4, Plaintiff was transferred from the ICU to the Internal Medicine Red Team for further monitoring before discharge to an acute rehab facility. (AMD0071.) At the time, Plaintiff "showed improving opacification right vertebral artery and evolving known cerebellar ischemic infarct without concerning change. [Plaintiff] remained stable prior after transfer with only mild suboccipital headache relieved by Percocet and persistent dizziness with upward/downward gaze. [Plaintiff's] physical exam remained normal without change." (Id.)

On October 6, 2017, Plaintiff was transferred from the Naval Medical Center to Alvarado Hospital for stroke rehabilitation. (AMD0074.) The referral noted that Plaintiff "is with impaired mobility, transfers and ambulation. He is also with impaired activities of daily living." (Id.) Plaintiff's rehabilitation therapy included physical therapy for "mobility, transfers, and ambulation," as well as occupational therapy for "activities of daily living." (AMD0075.) Plaintiff was also evaluated for speech and cognitive therapies. (Id.) Plaintiff's rehabilitation prognosis was "Good" and his estimated length of stay was 7-10 days. (Id.)

Plaintiff was discharged from Alvarado Hospital eight days later, on October 14, 2013. (AMD0076.) Plaintiff's attending physician, Dr. Arcilla, noted that Plaintiff had "made good functional improvement[s]" and was able to independently ambulate more than 500 feet, was able to ascend and descend two flights of stairs, had good balance, had

good static and dynamic standing, and had good safety awareness. (AMD0077.) With regards to "upper extremity ADLs, [Plaintiff was] independent with self-feeding, hygiene and grooming, dressing, as well as bathing activities." (Id.) Dr. Arcilla also noted that Plaintiff had "no cognitive issues" and did not need speech therapy or occupational therapy. (Id.) Plaintiff was scheduled to continue physical therapy three times a week for two weeks and also continued vestibular therapy. (Id.)

On November 15, 2013, Plaintiff was examined by Dr. Duckworth, who conducted a neurologic exam. (AMD0251.) Dr. Duckworth reported that Plaintiff was alert and oriented (A/Ox4), his motor control was "5/5 throughout", and he was "Romberg negative." (Id.) Plaintiff reported "mild disequilibrium" during the Romberg testing, but it did not interfere with his ability to complete the task. (Id.) Dr. Duckworth recommended an anticoagulant and referred Plaintiff to the Coumadin clinic. (Id.)

On November 21, 2013, Plaintiff's physical therapist, Kim Gottshall, reported that "[Plaintiff] reports that he barely has any symptoms with positional exercises. He states he is feeling very much like himself with only minimal dizziness following an activity." (AMD0265.) At the time Plaintiff reported "less intense and frequent headache or dizziness" but still reported "episodic vertigo upon laying down but only last (six) for approximately 50 seconds." (AMD0264.) Plaintiff had no difficulty walking. (Id.)

On December 9, 2013, Plaintiff was approved for $25,000 in TSGLI benefits due to a hospitalization of more than 15 days due to a traumatic brain injury. (AMD0003-05.) On March 12, 2014, Plaintiff submitted a supplemental application for an additional $50,000 in TGSLI benefits due to 60 consecutive days of ADL losses. (AMD0079-80.) On March 20, 2014, Plaintiff's supplemental application was denied "due to insufficient medical documentation provided to substantiate OTI ADL losses." (AMD0115-17.) On April 14, 2014, Plaintiff appealed the denial of his TSGLI benefits. (AMD0179-180.) On June 27, 2014, the appeal was denied because "it was determined that [Plaintiff's] claimed injuries and the available medical documentation were inconsistent with the program definition for the loss of two or more ADLs for 60 or more days." (AMD0226.)

Following the denial, Plaintiff appealed to the Navy Council of Review Boards ("the CORB") on August 11, 2014. (AMD0230-232.)

On January 9, 2015, the CORB granted Plaintiff's appeal, in part. (AMD0239.) The CORB determined there was sufficient evidence to support Plaintiff's claim of two or more ADLs for 30 consecutive days, but not for 60. (Id.) Accordingly, the CORB awarded Plaintiff an additional $25,000. (Id.) The CORB's memorandum recording their decision stated the following:

> Upon review of the case file, it is clear that on 26 September 2013 BU3 Prado suffered a traumatic brain injury manifested as cerebellar infarcts likely from a thrombotic event due to his right vertebral artery dissection. He had a normal Romberg test documented as of 30 October 2013 with some induced nystagmus with right lateral gaze. By 14 November 2013 BU3 Prado reported to his neuro-intensivist that he had returned to his pre-stroke neurological baseline with the exception of some mild disequilibrium. It is reasonable to assume that he needed some supervision with bathing, dressing, and transferring for some period of time after discharge. However, by 14 November 2013, he reported to his provider that he had returned to his neurological baseline. Therefore, based upon the foregoing, there is sufficient evidence that BU3 Prado required assistance with two or more ADLs as a direct consequence of a traumatic brain injury for up to 30 days (but NOT the 60 days BU3 Prado has claimed) after his discharge from the hospital. Under the Traumatic Service Members Group Life Insurance of Losses #17 for suffering a traumatic injury resulting in the inability to perform at least two activities of daily living (ADLs) for 30 consecutive days, the appeal is approved.

(AMD0237-38.)

///

///

On February 12, 2015, Plaintiff submitted another appeal to the CORB, requesting reconsideration of the partial denial of his TSGLI benefits. (AMD0253-254.) On March 11, 2015, the CORB denied Plaintiff's request for reconsideration because it did not contain any new and material evidence. (AMD0278.) Plaintiff had included a new statement from Nancy Olson, an independent nurse reviewer, but the CORB determined it was not a basis for reconsideration because it "merely provide[d] summaries of evidence previously available to the board." (Id.) On March 17, 2015, Plaintiff submitted a second request for reconsideration, arguing that Olson's statement was "new and material evidence" because it references the effect that Coumadin had on Plaintiff. (AMD0279.) Plaintiff also submitted an additional personal declaration, as well as a Department of Veterans Affairs rating document. (AMD0280-305.) On June 30, 2015, the CORB denied Plaintiff's second request for reconsideration because there was no new material objective medical evidence demonstrating a loss of ADLs for 60 days. (AMD0306.)

Plaintiff submitted his final administrative appeal to the Board of Correction of Naval Records ("the BCNR") on July 8, 2015. (AMD0307-09.) By letter dated May 20, 2016, the BCNR rejected Plaintiff's appeal. (AMD1339-40.) The BCNR reasoned:

> Upon examination of the evidence, the Board found that your family member statements support your claim that you received standby assistance through 15 December 2013. However, the Board was unable to find the necessary medical evidence to support a finding that your medical condition required the standby assistance through 15 December 2013. Your rehabilitation records show that you were still experiencing dizziness on 13 November 2013 but that your visual acuity had normalized. The following week on 21 November 2013, you completed your rehabilitation. The next medical entry of note was a 22 January 2014 Neurology report that your dizziness still exists but has improved significantly. Based on the evidence that you completed rehabilitation on 21 November 2013, the Board felt that

your medical condition no longer required standby assistance from your family members. The Board concluded that the 2014 Neurology report was insufficient evidence to support a determination that your condition was debilitating enough to require standby assistance beyond 21 November 2013.

(AMD1339-40.) As such, the BCNR denied Plaintiff's appeal.

## DISCUSSION

I. **LEGAL STANDARDS**

A. **TSGLI Benefits**

Service members insured under the Servicemembers' Group Life Insurance are automatically insured for traumatic injuries. 38 U.S.C. § 1980A. For purposes of § 1980A, covered injuries include "[c]oma or the inability to carry out the activities of daily living resulting from traumatic injury to the brain. Id. § 1980A(b)(1)(H). "The term 'inability to carry out the activities of daily living' means the inability to independently perform two or more of the following six functions: (i) Bathing, (ii) Continence, (iii) Dressing, (iv) Eating, (v) Toileting, [and] (vi) Transferring. Id. § 1980A(b)(2)(D). Where the service member's injury results in the inability to carry out two or more activities of daily living ("ADLs"), the service member is entitled to $25,000 on the fifteenth consecutive day of ADL loss, an additional $25,000 on the thirtieth consecutive day of ADL loss, and an additional $25,000 for every subsequent period of thirty days of consecutive ADL loss, up to $100,000. 38 C.F.R. § 9.20(f)(17). If a service member was hospitalized due to a traumatic brain injury for the first 15 consecutive days, then a $25,000 payment for hospitalization is substituted for the first loss of ADL payment. 38 C.F.R. § 9.20(f)(18).

B. **Administrative Review**

District courts have jurisdiction to review denials of TSGLI benefits pursuant to 38 U.S.C. § 1975. Because the statute does not specify a standard of review, courts apply the arbitrary and capricious standard dictated by the Administrative Procedures Act.

Greenwood v. United States, 2017 WL 2445535, *2 (June 6, 2017 S.D. Cal.) (reviewing TSGLI decision under the arbitrary and capricious standard); Fail v. USA, 2013 WL 5418169, *2 (Sept. 27, 2013 D. Co.) (same); see also U.S. v. Carlo Bianchi Co., 373 U.S. 709, 715 (1963) ("in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held"). Under this deferential standard, an agency's action "may be set aside only if they are 'arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law.'" Or. Natural Res. Council Fund v. Goodman, 505 F.3d 884, 889 (9th Cir. 2007) (quoting Envtl. Prot. Info. Ctr. v. U.S. Forest Serv., 451 F.3d 1005, 1008-09 (9th Cir. 2006)). The "court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The agency need only "articulate a rational connection between the facts found and the conclusions made." Id. (quoting Or. Natural Res. Council v. Lowe, 109 F.3d 521, 526 (9th Cir. 1997)). However, an agency's decision is arbitrary and capricious where the agency "relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007).

## II. ANALYSIS

Plaintiff was hospitalized on September 28, 2013. (AMD0056.) Neither party disputes this onset date, or the fact that it resulted from a traumatic brain injury. (See Doc. No. 7-1 at 5, Doc. No. 6-1 at 15; accord AMD0043.) The Navy Council of Review Boards and the Board of Correction of Naval Records (together "the Navy") determined that Plaintiff was entitled to TSGLI benefits of $50,000 on account of his 15 consecutive days of hospitalization resulting from a traumatic brain injury, followed by an additional 15 consecutive days of a loss of two or more ADLs. (AMD1339); see 38 C.F.R. §

9.20(f). The Navy, however, rejected Plaintiff's claim for an additional $25,000 in TSGLI benefits because it determined Plaintiff did not establish that he suffered the loss of two or more ADLs for 60 consecutive days and the medical evidence indicated that he completed his rehabilitation by November 21, 2013. (AMD1339-40.) Plaintiff now challenges this decision, raising various arguments as to why it should be reversed. First, Plaintiff argues the Navy's denial of TSGLI benefits was arbitrary and capricious in light of the evidence. (Doc. No. 7-1 at 22-25.) Second, Plaintiff argues that the Navy improperly narrowed the standard for assessing Plaintiff's TSGLI claim. (Id. at 15-17.) Third, Plaintiff argues that the Navy's actions were arbitrary, capricious, an abuse of discretion, and not in accordance with the law because the written opinions of the CORB and BCNR did not provide adequate attention to the evidence presented and addressed the evidence in a conclusory manner. (Id. at 17-19.) Fourth, Plaintiff argues that the Navy's actions were arbitrary, capricious, and an abuse of discretion because they did not provide him with internal documents created during the administrative review process. (Doc. No. 8 at 9.) The Court addresses each argument in turn.

**A. Evidence in the Record**

Plaintiff argues that the Navy's denial of his claim was arbitrary and capricious in light of the evidence presented in the record. (Doc. No. 7-1 at 22.) Plaintiff argues that the Navy ignored the declarations of his family members and failed to give weight to the opinions of his medical experts. (Id.) Defendant responds that the Navy's decision was not arbitrary and capricious because the medical record supports the conclusion that Plaintiff had sufficiently recovered by November 21, 2013. (Doc. No. 6-1 at 15-16.) Defendant argues that, because the medical evidence is clear, the Navy's decision to discount the declarations of Plaintiff and his family members, as well as the opinions of the medical experts, was appropriate. (Id. at 18.)

Review under the APA is highly deferential. Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43. An agency's decision will stand "if the agency has articulated a rational connection between the facts found and the conclusions made." San Luis &

Delta-Mendota Water Authority v. Locke, 776 F.3d 971, 994 (9th Cir. 2014); accord id. "Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may be reasonably discerned. Alaska Dept. of Env. Cons. V. E.P.A., 540 U.S. 461, 497 (2004).

The Navy determined that Plaintiff was not entitled to a third period of TSGLI benefits because his loss of two or more ADLs did not exist for at least 60 consecutive days. (AMD1340.) The Navy found that Plaintiff completed his rehabilitation by November 21, 2013 and there was no subsequent medical records showing that he continued to be unable to perform two or more ADLs. (Id.) On November 21, 2013, Plaintiff was seen by his physical therapist, Kim Gottshall. (AMD0264.) By this time, Plaintiff had succeeded in meeting his recovery goals of "ambulat[ing] 30 feet with horizontal head movements, not veering >8 inches from midpath" and "improv[ing] DVA logMAR loss to 0.20 globally." (AMD0265.) Gottshall recorded that "[Plaintiff] reports that he barely has any symptoms with positional exercises. He states he is feeling very much like himself with only minimal dizziness following an activity." (Id.) Similarly, Gottshall noted that Plaintiff had no difficulty walking, no headaches, no hearing loss, and no tinnitus. (AMD0264.)

Prior medical records confirm Plaintiff's recovery. When Plaintiff was discharged from the Alvarado Hospital on October 14, 2013, Garcia Arcilla, M.D., noted that Plaintiff was "improved to being independent with ambulation more than 500 feet," "was able to negotiate up and down two flights of stairs," had good balance, was able to stand well, and had good safety awareness. (AMD0019.) Furthermore "[f]or upper extremity ADLs, [Plaintiff] is independent with self-feeding, hygiene and grooming, dressing, as well as bathing activities." (Id.) Finally, Arcilla noted there were "no cognitive issues" and Plaintiff's headaches "had improved." (Id.) In light of Plaintiff's conditions, Arcilla determined that Plaintiff did not need any assistive home equipment. (AMD0020.)

On October 30, 2013, Plaintiff was examined by Michael Delaney, M.D., in the Naval Medical Center Neurology Clinic. (AMD0246.) On examination, Delaney

9

3:17-cv-00128-H-AGS

recorded that Plaintiff had normal motor tone, normal coordination, and normal native and stressed gait. (Id.) Furthermore, Delaney recorded that Plaintiff did not exhibit a Romberg sign, which can be indicative of difficulty balancing. (Id.) In summary, Delaney wrote "[Plaintiff] has improved significantly now with continued dizziness but with much improvement in this and with his headaches." (Id.) Plaintiff was next seen in the Neurology Clinic on November 14, 2013 by Josh Duckworth, M.D. Duckworth reported that "[o]n presentation today [Plaintiff] is able to ambulate independently and reports only a mild disequilibrium, primarily with head rotation, otherwise, he believes he has returned to his pre-event baseline." (AMD0251.) On examination Duckworth found Plaintiff alert and oriented (A/Ox4) and was "linear and logical in providing his medical history and understanding of medical explanations and descriptions as they related to his symptoms and course of care." (Id.) With regard to Plaintiff's coordination, Duckworth noted "no ataxia, no dysmetria, s/e arm swing and stride length, Romberg negative. During Romberg testing patient reports mild disequilibrium, this does not interfere with his ability to complete the task." (Id.) This evidence is sufficient to support the Navy's conclusion that Plaintiff did not suffer a loss of two or more ADLs for 60 consecutive days. San Luis & Delta-Mendota Water Authority, 776 F.3d at 994.

  Plaintiff argues that the declarations he submitted show that the Navy's decision was not supported by the evidence. Plaintiff submitted a personal declaration stating that he suffered continued dizziness after his discharge from the hospital and needed help bathing, toileting, eating and transferring on a daily basis until at least December 15, 2013. (AMD0089.) Plaintiff also submitted declarations from his mother, father, and sister, corroborating his continued loss of ADLs. (AMD0091-101.) The Navy considered these declarations but found that, while they did support Plaintiff's claim, they were inconsistent with the medical record. (AMD1139-40.)

  It was the Navy's job to weigh the evidence in the record and to make credibility determinations. Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 30 ("the court is not to substitute its judgment for that of the agency; see also, Austin v. United States, 2014

WL 12637958, *3 (July 7, 2014 W.D. Texas) (discrediting self-serving letters because they were not supported by the medical record). Here, Plaintiff's declarations were directly contradicted by the medical record. For example, Plaintiff's personal declaration stated that he had difficulty engaging in various ADLs because his house was not equipped with railings in the shower. (AMD0089.) However, Dr. Arcilla specifically noted that Plaintiff did not need assistive home equipment when he was discharged and was able to bathe independently. (AMD0020.) Plaintiff's mother's declaration states that Plaintiff "was bed stricken until the middle of December." (AMD0093.) However, when Plaintiff was discharged from Alvarado hospital in the middle of October, Dr. Arcilla noted that Plaintiff could walk independently for more than 500 feet and was able to walk up and down two flights of stairs. (AMD0019.) And subsequent doctors' visits confirmed his ability to walk without assistance. (AMD0251, AMD0264.) Plaintiff's mother also claimed that Plaintiff had trouble with short-term memory, (AMD0094), but Plaintiff's doctors repeatedly stated that Plaintiff had no cognitive deficits, (e.g., AMD0019, AMD0251.) The declarations of Plaintiff's father and sister were similarly contradicted by the opinions of Plaintiff's doctors, as set forth in the medical record. As the Navy stated in its final denial of benefits, it considered Plaintiffs' declarations but discredited them to the extent they conflicted with the medical record. This explanation provides a "rational connection" between the facts found by the agency and their ultimate conclusion and, thus, the Navy's decision must stand.[1] San Luis & Delta-Mendota Water Authority, 776 F.3d at 994.

---

[1] Plaintiff argues the Navy's weighing of the evidence was erroneous because it failed to apply the "Benefit of the Doubt Rule." (Doc. No. 7-1 at 19-20.) Plaintiff did not raise this argument during the administrative appeals and, thus, the Court cannot consider the argument in the first instance. SSA Terminals v. Carrion, 821 F.3d 1168, 1174 (9th Cir. 2016) ("The administrative waiver doctrine, commonly referred to as issue exhaustion, provides that it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency involved.") (citing Coalition for Gov't Procurement v. Fed. Prison Indus., Inc., 365 F.3d 435, 461-62 (6th Cir. 2004)); see also Koffarnus v. United States, 175 F.Supp.3d 769, 776-77 (W.D. Ky. 2016.) (rejecting a benefit of the doubt argument because it was not raised in front of the agency).

## B. Improper Narrowing

Plaintiff argues that the Navy improperly narrowed the applicable standard, as evidenced by a March 20, 2014 email from Mary A. Koontz, the Navy Program Manager for Traumatic Injury SGLI. (Doc. No. 7-1 at 16.) Plaintiff claims Koontz's email, which stated that "9 out of 10 times, once a patient 'begins' physical therapy, they are no longer eligible for ADL losses," demonstrates that the Navy applies a per se rule that has no basis in the law. (AMD0118-19.) Defendant responds that the record shows the Navy followed the applicable standards and Koontz's email did not narrow those standards.

The Court agrees with Defendant. The record, when considered as a whole, shows that the Navy applied the appropriate standards in adjudicating Plaintiff's claim. When the CORB denied Plaintiff's appeal, they stated the appropriate standard for TSGLI benefits premised on loss of ADLs but determined Plaintiff did not meet the standards because "by 14 November 2013, he reported to his provider that he had returned to his neurological baseline." (AMD0237-38.) Similarly, the BCNR contains no improper standard and gave specific reasons for their decision. (AMD1339-40.)

Furthermore, there is nothing in the email from Koontz to suggest there was a per se rule regarding eligibility for ADL losses. The portion of Koontz's email that Plaintiff relies on is actually an email sent to all U.S. naval personnel seeking to file a TSGLI claim, which provides information regarding how to file a claim. (AMD0118.) It does not purport to set out any legal standards but, rather, attempts to provide general information for applicants. (Id.) Indeed, the particular portion that Plaintiff identified has nothing to do with traumatic brain injuries, but rather with regards to "single limb injuries." (Id.) As such, it could have no impact on Plaintiff's claim.

Finally, this district court has previously addressed Plaintiff's exact argument and rejected it. Greenwood v. United States, 2017 WL 2445535, *4 (June 6, 2017 S.D. Cal.) In Greenwood, the plaintiff similarly argued that the general email from Koontz showed that the Navy was incorporating additional criteria in their review of benefit claims. Id. However, the Court found that "Ms. Koontz does not set forth any

12

3:17-cv-00128-H-AGS

'additional criterion' for adjudicating TSGLI claims. Rather, Ms. Koontz appears to be explaining the requirements for filing claims in the first instance." The same reasoning applies here. Koontz's email was not providing a legal standard, rather simply trying to explain the filing requirements. And as the record shows that the Navy applied the correct standards throughout the adjudication process, Plaintiff's argument fails.

### C. Inadequate Explanation

Plaintiff argues that the Navy's actions were arbitrary, capricious, an abuse of discretion, and not in accordance with the law because the written opinions of the CORB and BCNR did not provide adequate attention to the evidence presented and addressed the evidence in a conclusory manner. (Id. at 17-19.) In making their decision, an agency "must examine the relevant data and articulate a satisfactory explanation." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. This standard is deferential and courts will not upset an agency's decision simply because the explanation is made with "less than ideal clarity." Alaska Dept. of Env. Cons., 540 U.S. at 497. Indeed, the decision will stand as long as the agency's path can "reasonably be discerned." Id.

In the initial denial of Plaintiff's supplemental claim, the Navy stated the claim was not payable "due to insufficient medical documentation provided to substantiate OTI ADL losses." (AMD0116.) Similarly, when his first appeal was denied, the Navy Personnel Command explained that "your claimed injuries and the available medical documentation were inconsistent with the program definition for the loss of two or more ADLs for 60 or more days." (AMD0226.) Subsequently, when the CORB reviewed Plaintiff's claim, it provided a more detailed memorandum regarding the decision. (AMD00237-41.) This memo lists the board members who reviewed Plaintiff's claims and provides a summary of their findings:

> [Plaintiff] had a normal Romberg test documented as of 30 October 2013 with some induced nystagmus with right lateral gaze. By 14 November 2013 BU3 Prado reported to his neuro-intensivisit (sic) that he had returned to his pre-stroke neurological baseline with the exception of some mild

> disequilibrium. It is reasonable to assume that he needed some supervision with bathing, dressing, and transferring for some period of time after discharge. However, by 14 November 2013, he reported to his provider that he had returned to his neurological baseline. Therefore, based upon the foregoing, there is sufficient evidence that BU3 Prado required assistance with two or more ADLs as a direct consequence of a traumatic brain injury for up to 30 days (but NOT the 60 days BU3 Prado has claimed) after his discharge from the hospital.

(AMD0237-38.) And the BCNR provided a similarly detailed analysis of Plaintiff's claim:

> The Board carefully considered [Plaintiff's] arguments . . . . Unfortunately, the Board disagreed with your rationale for relief. Upon examination of the evidence, the Board found that your family member statements support your claim that you received standby assistance through 15 December 2013. However, the Board was unable to find the necessary medical evidence to support a finding that your medical condition required the standby assistance through 15 December 2013. Your rehabilitation records show that you were still experiencing dizziness on 13 November 2013 but that your visual acuity had normalized. The following week, on 21 November 2013, you completed your rehabilitation. The next medical entry of note was a 22 January 2013 Neurology report that your dizziness still exists but has improved significantly. Based on the evidence that you completed rehabilitation on 21 November 2013, the Board felt that your medical condition no longer required standby assistance from your family members. The Board concluded that the 2014 Neurology report was insufficient evidence to support a determination that your condition was debilitating enough to required standby assistance beyond 21 November 2013.

(AMD1339-40.) These explanations articulate a satisfactory explanation of the Navy's decision to deny Plaintiff's claim. Motor vehicle Mfrs. Ass'n, 463 U.S. at 43. The Navy acknowledged that Plaintiff's family provided some evidence of his loss of ADLs, but ultimately determined that their declarations were not supported by the medical record, which affirmatively established that Plaintiff had been successfully rehabilitated. This explanation can be reasonably discerned from the Navy's explanation and that is enough. Alaska Dept. of Env. Cons., 540 U.S. at 497.

### D. Internal Documents

Plaintiff argues that the Navy's decision was arbitrary and capricious because the Navy failed to previously provide Plaintiff with internal documents regarding the denial of his claim that are now included in the Administrative Record. (Doc. No. 8 at 9.) Plaintiff argues that had he been provided with those documents, he could have better responded to the denial of his claim during the administrative appeals process. (Id.) Defendant responds that Plaintiff's counsel reviewed the Administrative Record before it was lodged and approved of the inclusion of the new documents. (Doc. No. 11 at 2-3.)

Plaintiff has offered no legal support for his argument that the failure to provide internal documents generated as part of an agency decision makes that decision arbitrary and capricious. (Doc. No. 8 at 9.) And the Court can find none. As the Supreme Court has instructed, an agency's decision cannot be upset simply because it explained its decision with "less than ideal clarity." Alaska Dept. of Env. Cons., 540 U.S. at 497. The court need only be able to reasonably discern the agency's path. Id.

Here, the Navy's rationale for rejecting Plaintiff's claim can be reasonably discerned from the documents Plaintiff received during the adjudication of his administrative claim. As stated by the CORB and the BCNR, Plaintiff's medical records show that he was sufficiently rehabilitated, such that he no longer suffered from two or more ADL losses, prior to the passing of 60 consecutive days. (AMD0237-38,

AMD1139-40.)  And this reasoning has remained the same throughout the administrative appeal process.  (Id.)  As such, Plaintiff had ample opportunity to present arguments and evidence supporting his claim.  See Greenwood, 2017 WL 2445535, *4 (rejecting the argument that the Navy acted improperly by failing to provide plaintiff with internal documents generated during the administrative process because they provided the same conclusions as those plaintiff received).  And in any event, Plaintiff has failed to explain how he was prejudiced by not having access to these documents during his appeals process; especially given that he had access to them as part of the present litigation and can address their merits before the Court.  Id. (rejecting the identical argument because plaintiff failed "to explain how his third appeal or his request for reconsideration would have been any different if he had the Memoranda identified").

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment, grants Defendant's cross-motion for summary judgment, and affirms the Navy's decision denying Plaintiff's claim.

**IT IS SO ORDERED.**

DATED:  August 28, 2017

Hon. Marilyn L. Huff
United States District Judge